```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                    HOT SPRINGS DIVISION


JAMES H. WILLIAMS, III and
JULIANN ELIZABETH WILLIAMS                          PLAINTIFFS


      v.              Case No: 6:10-cv-6023


UNITED STATES DEPARTMENT OF THE
INTERIOR, NATIONAL PARK SERVICE                     DEFENDANT
```

## MEMORANDUM OPINION

This matter is before the Court following a two-day bench trial on October 30-31, 2012, in Hot Springs, Arkansas. Also before the Court are the parties' simultaneous post-trial briefs (docs. 61-62). Plaintiffs brought this action under the Quiet Title Act, 28 U.S.C. §2409a ("QTA") seeking to quiet title to real property, described in paragraph I of their Complaint, specifically:

> A part of Wootton Division of FOREST HILLS ADDITION, a subdivision of part of the SE 1/4 NE 1/4 of Section 28, Township 2 South, Range 19 West, more particularly described as follows: Commencing at the SW corner of Lot 10 of said division on the north line of North Border Street and running east on the north line of North Border street for 80.1 feet to the POINT OF BEGINNING; thence northeasterly along the southerly line of Forest Hills Trail for 51.8 feet to the southerly line of said ten foot dirt road 185.0 feet; thence South 0'0'0' East for 33.3 feet to the north line of North Border street; thence west along said north line to the POINT OF BEGINNING.

Doc. 1, ¶1.

On December 5, 2011, the Court denied Defendant's Motion to

Dismiss or, in the Alternative, for Summary Judgment (doc. 38), and this matter proceeded to trial before the Court. The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

**A. Findings of Fact**

1. Plaintiffs own Part of Lot 13, Block 193 of the Hot Springs Reservation, which is situated on the south side of North Border Street (platted but never built).

2. Katrina S. Williams, mother of Plaintiff, James H. Williams, III, deeded the property to Plaintiffs on June 18, 1998. The deed was recorded on June 18, 1998, at Volume 1805, Page 618, in the records of Garland County, Arkansas.

3. Katrina S. Williams and her husband, James H. Williams, Jr. purchased the property on March 31, 1977, from Hannah Kroll, residuary devisee of Stella M. Moler, deceased. The deed was recorded at Book 834, Page 511-12, in the records of Garland County, Arkansas.

4. Stella M. Moler died on November 1, 1965, according to the petition for probate of will and appointment of personal representative, which was filed in the Probate Court of Garland County, Arkansas, Case No. 10461, on November 8, 1965.

5.  Stella M. Moler and her husband, Arthur B. Moler, purchased the property on June 30, 1948, from Ray S. Smith, Jr.  The deed was recorded on April 7, 1949, at Book 309, Page 516, in the records of Garland County, Arkansas.

6.  The subject property is located on the north side of North Border Street and is a part of the Wootton Division of Forest Hills Addition to Hot Springs National Park, Arkansas (Wootton Division).

7.  On or about February 25, 1927, W.T. Wootton and Emaline Whittington Wootton, his wife, filed a Bill of Assurance for the Wootton Division with attached plat.  The Bill of Assurance was recorded at Volume 160, Page 175, in the records of Garland County, Arkansas.  The plat was also recorded in Plat Book 3, Page 32 in the records of Garland County, Arkansas.  The plat recorded along with the Bill of Assurance added a ten-foot strip of land to the north of the existing 30-foot North Border Street right of way in order for the platted Emma Jean Road and Westcott Heights right of ways to be 40 feet in width where they converged with the North Border Street right of way to form the southern border of Wootton Division.

8.  On March 19, 1946, Emaline W. Wootton, deeded to Euclid M. Smith and Madge Wootton Smith (Smiths) Lots 9 and 10 of the Wootton Division, as well as part of Lot 5 in Block 7 of

AO72A
(Rev. 8/82)

      Conway Heights Subdivision.  The deed was recorded March 20, 1946, at Volume 270, Page 341-42 in the records of Garland County, Arkansas.

9. On December 4, 1956, Lawrence Westbrook and Martha Wootton Westbrook deeded to the Smiths part of Lots 6, 7 and 12, all of Lots 8, 11, 22, 23 and 24 of the Wootton Division and acreage located on the South side of said Forest Hills Subdivision bordered by Lots 26, 22, 23 and 24.  The deed was recorded December 14, 1956 at Volume 431, Pages 171-72 in the records of Garland County, Arkansas.

10. On April 7, 1967, the Smiths deeded to the City of Hot Springs, Arkansas .505 acres in Lot 24, a 20 foot easement for installation of water mains in Lots 9 and 11, and a 50-foot easement for an access road in Lots 11 and 24.  The deed was recorded April 19, 1967, at Volume 602, Pages 309-10 in the records of Garland County, Arkansas.

11. On December 14, 1967, Dr. Euclid M. Smith, as the owner of Lots 9, 10 and 11 of Wootton Division, petitioned the City of Hot Springs to close and abandon that portion of Emma Jean Road because the road was straightened.  The plat attached to the petition depicts the area west and southwesterly in dispute in this matter as a portion to be vacated by the City.

12. On March 4, 1968, by Ordinance No. 2953 the City of Hot

      Springs vacated and abandoned to the Smiths all that portion of a street known as "Emma Jean Road" described as follows: "All that portion of Emma Jean Road lying north of the north line of North Border Street or Forest Hills Road and south or southeast of Lots 9 and 10 of Wootton Division of Forest Hills Addition, a subdivision of part of the SE1/4 NE1/4 of Section 28, Twp. 2S, R. 19W, Garland County, Arkansas."

13. Ordinance No. 2953 was subsequently filed on September 5, 1973 at Volume 735, Pages 04-05 in the records of Garland County, Arkansas. As noted in the Ordinance, "the petitioner, Dr. Euclid M. Smith, was the sole and only owner of property abutting on the portion of the street as hereinabove set forth..."

14. On December 30, 1967, Euclid M. Smith and Madge Wootton Smith executed a Dedication Deed to the City of Hot Springs for the purpose of dedicating the realigned and relocated portion of Emma Jean Road to the City of Hot Springs.

15. On March 18, 1968, the City of Hot Springs adopted Resolution No. 845 accepting the Smith Dedication Deed. A copy of the Dedication Deed and Plat are attached to the Resolution. Neither the Resolution nor the Dedication Deed was ever filed in the records of Garland County, Arkansas.

16. Euclid M. Smith and Madge Wootton Smith died thereafter.

AO72A
(Rev. 8/82)

        Madge Wootton Smith's will was opened on May 1, 1973, Garland County Probate No. 13,320.

17. The Order of Distribution entered on July 20, 1973 with respect to Madge Wootton Smith's estate conveyed two parcels of land to the daughters of Madge Wootton Smith: Gale Smith McFarlin and Lee Smith Humphreys, who took title as Tenants in Common.  Those two parcels were described as follows in the Order of Distribution: (A) "Lots 9 & 10 of Wootton's Subdivision of Forest Hills Addition to Hot Springs National Park, Garland County, Arkansas (133 Forest Hills Road)"; (B) "A part of the SE1/4 of the NE1/4 of Section 28, Township 2 South, Range 19 West, being also a part of Wootton's Subdivision of Forest Hills Addition to the City of Hot Springs, Garland County, Arkansas.

18. On September 14, 1973, the Smiths' heirs, Gale Smith McFarlin and Lee Smith Humphreys, deeded Lots 9 and 10 of Wootton Division and part of Lot 5 of Block 7 of Conway Heights Subdivision to Remlo Enterprises, Inc.  The deed was recorded on September 24, 1973, at Volume 736, Pages 229-30, in the records of Garland County, Arkansas.

19. Subsequently, on August 30, 1974, the Smith heirs deeded Lots 11, 22 and 23 and Part of Lots 12 and 24 of the Wootton Division to Remlo Enterprises, Inc.  The deed was recorded on August 20, 1974, at Volume 759, Pages 314-16,

**AO72A**
**(Rev. 8/82)**

       in the records of Garland County, Arkansas.  Neither deed addressed the property vacated by Ordinance No. 2953.

20. On June 28, 1985, Fred Russell Loyd and Mary Octavia Loyd deeded part of Lot 10 of the Wootton Division containing .65 acres to Emogene T. Loyd.  The deed was recorded on August 6, 1985, at Volume 1127, Pages 324-25, in the records of Garland County, Arkansas.

21. Remlo Enterprises subsequently deeded all of Lots 9, 11, 22 and 23, the remaining part of Lot 10, and part of Lots 12 and 24 of the Wootton Division to Emogene Loyd and Fred R. Loyd, on March 11, 1986.  The deed was recorded on March 13, 1986 at Volume 1161, Pages 758-760 in the records of Garland County, Arkansas.

22. In 1986, the United States purchased two parcels of land in the Wootton Division of Forest Hills Addition, from Fred R. Loyd, Emogene T. Loyd and Russell O. Loyd by Warranty Deeds Lots 11, 22 and 23, and Parts of Lots 12 and 24, containing approximately 9.30 acres, known as NPS Tract No. 05-130, was purchased on May 21, 1986.  The deed was recorded on May 22, 1986 at Volume 1171, Pages 50-53, in the records of Garland County, Arkansas.  A Correction Warranty Deed for NPS Tract No. 05-130 was executed by the Loyds on March 27, 1990 and filed on March 30, 1990 in Volume 1334, Pages 244-47.

23. Lot 9 and part of Lot 10, containing approximately 1.7 acres, known as NPS Tract No. 05-157, was purchased on June 6, 1986. The deed reserved the right of use and occupancy of the property for 20 years and was recorded on June 9, 1986, at Volume 1173, Pages 338-344, in the records of Garland County, Arkansas.

24. On May 21, 1986, Hugh Crenshaw, an employee of the Department of Interior, completed a certificate of possession and inspection stating he was fully informed of the boundaries of Tract 05-130, and no other person had any outstanding right to possession of that property.

25. Plaintiff James Williams and his parents moved near 130 Forest Hills Trail in 1953, and he would visit the Molers who lived there at that time. Katrina Williams testified that around 1955, there was a fence around the property which she eventually purchased in 1977, believing she purchased everything within the fence.

26. Plaintiff James Williams testified he remembered the fence posts being there in 1978 after his parents purchased the property, and Mrs. Williams testified she rebuilt the existing fence from remaining remnants of the original fence after moving there in 1994.

27. Mr. Loyd testified he remembered the fence being there in 1973 and that it had been there for many years. Mr. Loyd

    considered it to be the boundary of the Williams' property and that he did not consider anything within the fence to be part of the conveyance from the Smith heirs to him. Mr. Loyd further testified he pointed out the fence line to an agent from the National Park Service, and that he never owned any of the vacated portion of Emma Jean Road, only Lot 11.

28. On March 23, 2006, the Loyds executed a Quitclaim Deed to the United States releasing the remaining term of the reserved 20-year right of use and occupancy they reserved in Lots 9 and 10. The Quitclaim Deed was recorded on April 7, 2006, at Book 2679, Pages 0762-0764, in the records of Garland County, Arkansas.

29. On March 20, 2000, Plaintiffs obtained a Building Permit to construct a potting shed (the "Opera House") and, subsequently, constructed the shed.

30. Defendant contracted with John Thornton of B&F Engineering, Inc. for a land survey, dated November 2007, of the area in question.

31. The survey completed by John Thornton indicated that Plaintiffs' improvements were located outside their own property boundaries and encroaching upon Defendant's lands and on the North Border Street right of way.

32. John Thornton testified that all of the property in

AO72A (Rev. 8/82)

>   Paragraph 1 of Plaintiffs' Complaint lying North of the original right of way on North Border Street as platted, would be encroaching upon Defendant's property.  This would include 36.3 feet of the planter, 81.3 feet of the fence, that part of ten feet by 19.8 feet potting shed outside of the North Border Street right of way and that 18 feet of fenced area that is located in Lot 11 as originally platted.  In addition, Thornton testified the potting shed and 9 feet of the fence are in the Westcott Heights right of way, except the Southwest triangle of the shed which lies in the platted North Border Street right of way. Thornton testified that the vacated portion of Emma Jean Road as described in Ordinance 2953, in his opinion, conveyed to Remlo Enterprises.

33. According to Steve Hankins who surveyed the land for Plaintiffs, there is no encroachment on Defendant's land as Defendant never gained title to the land in question. Hankins testified the property reverted back to the Smiths and, subsequently, the Smith heirs when the City vacated Emma Jean Road.  In December 2011, the Smith heirs, pursuant to a Quitclaim Deed, granted to Plaintiffs:

    ALL THAT PORTION OF EMMA JEAN ROAD LYING NORTH OF THE NORTH LINE OF NORTH BORDER STREET OR FOREST HILLS ROAD AND SOUTH OR SOUTHEAST OF LOTS 9 AND 10 OF WOOTTON DIVISION OF FOREST HILLS ADDITION, A SUBDIVISION OF A PART OF THE SE1/4 NE1/4 OF SECTION 28, TWP. 2S, R. 19W, GARLAND COUNTY, ARKANSAS.

AO72A
(Rev. 8/82)

**B. Conclusions of Law**

1. This Court has jurisdiction under the Quiet Title Act, as Plaintiffs cannot be deemed to know of the claim of the United States prior to 2007 when their ownership was called into question, not in 1986 as Defendant claims.

2. These lands were abandoned and vacated by the City of Hot Springs by way of its adoption of Ordinance 2953. Further, the heirs of Madge Wootton Smith granted Plaintiffs record legal title to the lands.

3. Pursuant to Arkansas law, the grantee takes to the center of an abandoned easement only when the grantor explicitly expresses that intention. *Pyron v. Blanscet*, 218 Ark. 696, 697-98, 238 S.W.2d 636, 637 (Ark. 1951) *citing City of Fordyce v. Hampton*, 179 Ark. 705, 17 S.W.2d 869 (Ark. 1929). Steve Hankins testified the vacated portion of Emma Jean Road remained with the Smith heirs, because there was no express verbiage when deeded to Remlo. When the Smith heirs deeded lots 9-11, to Remlo, the conveyance was only to the right of way line, not to the center of the road of the vacated portion adjoining Lot 11. Therefore, they held title to that portion until granting it to Plaintiffs in December 2011.

4. Accordingly, the Court finds Plaintiffs gained record legal title to the land in question.

5.  Alternatively, the boundary between Plaintiff's property and Lot 11 was established by acquiescence prior to any conveyance to the United States.

6.  Based on testimony from previous property owners, such as Mr. Loyd and Ms. Williams, the property in question was deemed by acquiescence to be part of the Williams' property prior to any alleged interest by Defendant. In *Rabjohn v. Ashcraft*, 252 Ark. 565, 480 S.W.2d 138 (1972) the Arkansas Supreme Court set out the principles governing the law of boundary lines by agreement and by acquiescence:

    > The proprietors of adjacent lands may establish a binding arbitrary boundary line, by agreement, which may be parol. Such an agreement becomes binding if the location of the true line is in doubt or dispute, and the parties enter into possession pursuant to it, even though their possession does not extend for the full statutory period of seven years. The agreement need not be express, but it may be inferred from long-continued acquiescence of the parties and occupation according to such line, or from other actions of the parties. Quite apart from the inference of some parol agreement, a boundary may also be established by adjoining owners by acquiescence in a clearly established line as the boundary over a period in excess of seven years, whether preceded by a dispute or uncertainty as to the line or not and without the necessity of adverse user to the line. Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, it becomes the boundary by acquiescence. When the adjoining owners occupy their respective premises up to the line they mutually recognize and acquiesce in as the boundary for a long period of time, they and their grantees are precluded from claiming that the boundary thus recognized and acquiesced in is not the true one, although it may not be. Id. at 570-71, 480 S.W.2d at 141 (internal citations omitted).

7. Loyd testified there was a fence in 1973 in the disputed area that had been there for many years, and he considered it to be the boundary of the Williams' property. Loyd did not consider it part of the conveyance from the Smith heirs to him. Loyd further testified he pointed out the fence to an agent of the National Park Service, and he believed he never owned the vacated portion of Emma Jean Road, only to the lot lines. Therefore, the boundary was set by acquiescence, and Loyd could not have conveyed the disputed portion to Defendant, regardless of his intent.

8. Ms. Williams testified there was a fence around the property which she purchased from Ms. Kroll in 1977, and it was her belief she purchased everything within the fence. Julie Williams testified there were remnants of the old fence that she used to rebuild the fence after obtaining the property from Ms. Williams. James Williams further testified regarding the old fence posts that remained in 1978.

9. None of the Opera House is located in the vacated Westcott Road right of way, but is within the portion of Emma Jean Road lying north of the north line of North Border Street or Forest Hills Road and south or southeast of Lots 9 and 10 of Wootton Division that was vacated by Ordinance No. 2953 of the City of Hot Springs.

10. As the Court finds Plaintiffs possess record legal title to the disputed property, it is not necessary to address and analyze the merits of Plaintiffs' alternative adverse possession claim.

**C.   Conclusion**

The Court recognizes there was conflicting testimony in this case, including but not limited to, how and why this particular dispute arose and culminated into the case at bar. However, it is for the Court to determine matters of credibility.  While the Court is sympathetic with Defendant's charge to conserve and protect its lands, including the Hot Springs National Park, for the enjoyment of all American citizens, the property in question does not belong to the defendant.

Boundary line disputes often become emotional and, many times, confrontational, between the litigants.  Unfortunately, this case reflects the norm in these types of cases.  All of the parties to this litigation, believing they are correct in their respective assertions, exercised little in the way of discretion in presenting and making known their contentions.  Regardless of any affronts by and between the parties whether real or imagined, this case remains only a boundary line dispute governed by only the laws of real property.

Plaintiffs have proven they hold record legal title to the

AO72A
(Rev. 8/82)

disputed property as depicted in Plaintiff's Exhibit 28. Defendant never acquired title to the property as Loyd's deed did not convey the vacated portion of Emma Jean Road. That land remained with the Smith heirs who ultimately conveyed it to Plaintiffs by quitclaim deeds. Alternatively, Defendant never acquired the land as it became part of the Williams' property by acquiescence prior to any conveyance to Defendant. This was a close case, and counsel represented their respective parties very well. Accordingly, the Court finds all parties are to bear their own fees and costs. The parties have sixty days to appeal.

    IT IS SO ORDERED this 14th day of December, 2012.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge

AO72A
(Rev. 8/82)